UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/28/2026

ARA APRAHAMIAN

Plaintiff,

-against-

SANDOZ, INC., *et al.*,

Defendants.

24 CV 9045 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge

Plaintiff Ara Aprahamian ("Plaintiff" or "Aprahamian") brings this action against Teva Pharmaceuticals USA, Inc., Sandoz Inc., Christopher Bihari, Michael Vezza, Nisha Patel, and Hector Kellum (collectively, "Defendants"), asserting claims for malicious prosecution, malicious abuse of process, defamation, and violations of 42 U.S.C. § 1983. (*See generally* Complaint ("Compl."), ECF No. 1.)

Presently before the Court are Defendants' six motions to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6). (*See generally* Teva Mot., ECF No. 64 Sandoz Mot., ECF No. 66; Bihari Mot., ECF No. 71, Kellum Mot., ECF No. 76; Patel Mot., ECF No. ECF No. 78; Vezza Mot., ECF No. 83.) For the reasons set forth below, all of Defendants' motions are GRANTED in their entirety.

**BACKGROUND**

**A. FACTUAL BACKGROUND**

The following facts are derived from the Complaint and are taken as true and constructed in the light most favorable to the Plaintiff at this stage.

1

Plaintiff Ara Aprahamian served as Vice President of Sales and Marketing at Taro Pharmaceuticals U.S.A., Inc. ("Taro"), a manufacturer of generic pharmaceutical drugs, from March 2013 until August 2018. (Compl. ¶¶ 9, 18.) Prior to joining Taro, Plaintiff worked at another generic pharmaceutical manufacturer, Actavis, from 2010 to 2013. (Teva Mem. at 9.) In 2016, Teva Pharmaceuticals USA, Inc. ("Teva") acquired Actavis and assumed certain Actavis-related liabilities. (*Id.*)

Following a multi-year federal investigation into alleged anticompetitive conduct in the generic pharmaceutical industry, a federal grand jury sitting in the Eastern District of Pennsylvania returned an indictment against Plaintiff on February 4, 2020. (Teva Mem. at 4-5.) The indictment charged Plaintiff with conspiracy to restrain trade in violation of Section 1 of the Sherman Act and with making false statements to federal investigators. (*Id.*)

The government's investigation extended beyond Plaintiff and Taro. (Compl. ¶¶ 10–17.) Several pharmaceutical companies, including Sandoz Inc. ("Sandoz") and Teva, were targets of the investigation. (*Id.* ¶¶ 10–13.) Sandoz was charged by criminal information and entered into a deferred prosecution agreement ("DPA") pursuant to which it agreed to pay a criminal penalty of approximately $195 million. (Sandoz Mem. at 6–7.) Teva was later indicted by a grand jury in the Eastern District of Pennsylvania in August 2020 and ultimately entered into a DPA with the Department of Justice in August 2023, agreeing to pay approximately $225 million in monetary penalties and provide additional product donations. (Compl. ¶ 13; Teva Mem. at 5.)

The individual defendants named in the Complaint allegedly participated in the government's antitrust investigation in different capacities. Defendants Hector Armando Kellum, Michael Vezza, and Christopher Bihari are former employees of Sandoz Inc. (Compl. ¶¶ 14–16.) According to the Complaint, Bihari served as a sales representative and was identified as "CW1"

in Plaintiff's criminal indictment, Vezza was a pricing and contracts executive identified as "CW2," and Kellum, a Pennsylvania resident, held senior pricing and contracting roles and was identified as "CW3." (*Id.*) Plaintiff further alleges that Kellum pleaded guilty to a criminal antitrust offense and that all three individuals later cooperated with federal investigators during the broader antitrust investigation. (*Id.*)

Similarly, Defendant Nisha Patel is a former employee of Teva Pharmaceuticals USA, Inc., where she served as Director of Strategic Customer Marketing and later Director of National Accounts from April 2013 through December 2016, and was identified as "CW4" in the indictment. (Compl. ¶ 17.) Patel resides in Pennsylvania and worked for Teva in Pennsylvania during her employment. (*Id.*) Plaintiff alleges that, after leaving Teva, Patel communicated with and met federal investigators and prosecutors in connection with the government's antitrust investigation, including meetings held in Washington, D.C. and Philadelphia, Pennsylvania. (Patel Mem. at 10–11.)

Plaintiff further alleges that, toward this end, Defendants went beyond mere cooperation and became "knowing and active participants" in the prosecution by pressuring and manipulating federal agents to pursue criminal charges against him, believing that the volume of allegations supplied would increase the likelihood of reduced or avoided criminal liability. (Compl. ¶ 22.) The Complaint alleges that Patel, Bihari, Vezza, and Kellum fabricated claims concerning Plaintiff's involvement in non-existent customer-allocation agreements and coordinated pricing strategies, provided inconsistent accounts of an alleged price-fixing scheme, and falsely described meetings and conversations between Plaintiff and purported cooperating witnesses to the Department of Justice, the FBI, the U.S. Postal Service Office of Inspector General, and other federal investigators. (*Id.* ¶¶ 23–24, 27(a)–(e), 28(a)–(e), 29(a)–(d), 30(a)–(d).) Plaintiff contends that

these fabricated accounts were inconsistent with Taro's internal pricing procedures, which purportedly required multiple levels of corporate approval, and were contradicted by documentary evidence as well as the absence of corroborating communications, including emails, text messages, or meeting records. (*Id*. ¶¶ 23–25.)

The statements attributed to these individual defendants allegedly influenced federal investigators and prosecutors to pursue criminal charges against Plaintiff and set in motion the events that led to his indictment on February 4, 2020. (Compl. ¶¶ 31–32.) Such a criminal prosecution allegedly cost Plaintiff his career as a sales and marketing executive in the pharmaceutical industry, and irreparably damaged his professional and personal reputation. (Compl. ¶ 33.) After several years of criminal litigation, the government moved to dismiss the indictment with prejudice on November 29, 2023. (*Id*. ¶ 38.)  Plaintiff commenced this action on November 26, 2024, asserting claims for malicious prosecution, abuse of process, defamation, and denial of the right to a fair trial based on fabricated evidence under 42 U.S.C. § 1983. (*Id*. ¶¶ 34–54.)

## B.  PROCEDURAL HISTORY

Plaintiff filed a complaint on November 26, 2024. (ECF No. 1.) On June 9, 2025, all Defendants moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b). (Teva Mot., ECF No. 64; Sandoz Mot., ECF No. 66; Bihari Mot., ECF No. 71; Kellum Mot., ECF No. 76; Patel Mot., ECF No. 78; Vezza Mot., ECF No. 83).

Teva Pharmaceuticals USA, Inc., Sandoz, Inc., Christopher Bihari, Hector Kellum, Nisha Patel, and Michael Vezza each filed motions with supporting memoranda; Plaintiff opposed each motion, and the Defendants submitted replies.[1]

---

[1] (Teva Mem., ECF No. 65; Pltf. Teva Opp., ECF No. 69; Teva Reply, ECF No. 75; Sandoz Mem., ECF No. 67; Sandoz Pltf. Opp., ECF No. 68; Sandoz Reply, ECF No. 70; Bihari Mem., ECF No. 72; Bihari Pltf. Opp., ECF

# LEGAL STANDARD

## A.  Rule 12(b)(2)

A defendant may seek to dismiss a claim or action for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). To overcome a motion to dismiss for lack of personal jurisdiction at this juncture, the plaintiff must make a *prima facie* showing that the court has jurisdiction over each defendant. *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012). "Such a showing entails making legally sufficient allegations of jurisdiction, including an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant." *See Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34-35 (2d Cir. 2010) (internal quotation marks omitted). The Plaintiffs must also "establish the court's jurisdiction with respect to each claim asserted." *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004).  In resolving this motion, the court may rely on materials beyond the pleadings, including affidavits attached thereto. (*See id.*) The pleadings and supporting affidavits are construed in the light most favorable to plaintiff, with all doubts resolved in the plaintiff's favor. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010).

In diversity cases, courts apply a two-step analysis to determine personal jurisdiction. They first assess whether jurisdiction is authorized under the law of the forum state—here, New York's long-arm statute, CPLR § 302—and only if that threshold is met do they consider whether the exercise of jurisdiction comports with constitutional due process. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010); *Friedman v. Bloomberg L.P.*, 884 F.3d 83, 90 (2d Cir. 2017).

---

73; Bihari Reply, ECF No. 74; Kellum Mem., ECF No. 77; Kellum Pltf. Opp., ECF No. 80; Kellum Reply, ECF No. 81; Patel Mem., ECF No. 79; Patel Pltf. Opp., ECF No. 87; Patel Reply, ECF No. 82; Vezza Mem., ECF No. 84; Vezza Pltf. Opp., ECF No. 85; Vezza Reply, ECF No. 86.)

**B.  Rule 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). The Second Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . and documents that plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rotham v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted). The critical inquiry is whether the Plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**C.  Section 1983**

Section 1983 provides, in relevant part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983.

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see also Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To assert a claim under Section 1983, a plaintiff must allege "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, No. 09-CV-5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. 2013); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). Therefore, a Section 1983 claim has two essential elements: (1) the defendant acted under color of state law, and (2) as a result of the defendant's actions, the plaintiff suffered a denial of his federal statutory rights, or his constitutional rights or privileges. *See Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998); *Quinn v. Nassau Cty. Police Dep' t*, 53 F. Supp. 2d 347, 354 (E.D.N.Y. 1999) (Section 1983 "furnishes a cause of action for the violation of federal rights created by the Constitution").

In order for a defendant in a Section 1983 action to be held liable, the plaintiff must demonstrate the defendant was personally involved in the alleged constitutional violations. *Whitton v. Williams*, 90 F. Supp. 2d 420, 427 (S.D.N.Y. 2000). Personal involvement is defined as "direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Important context is that a defendant "in a § 1983 action is not liable simply on the basis of holding a high position of authority." *Dawson v. Cnty. of Westchester*, 351 F. Supp. 2d 176, 196 (S.D.N.Y. 2004). Additionally, "[p]leadings pursuant to § 1983 must contain 'more than mere conclusory

allegations.'" *Richard v. Fischer*, 38 F. Supp. 3d 340, 351 (W.D.N.Y. 2014) (quoting *Salahuddin v. Cuomo,* 861 F.2d 40, 43 (2d Cir.1988)).

## DISCUSSION

Plaintiff asserts claims for malicious prosecution, abuse of process, defamation, and denial of the right to a fair trial under 42 U.S.C. § 1983 against Teva Pharmaceuticals USA, Inc., Sandoz Inc., Michael Vezza, Christopher Bihari, Nisha Patel, and Hector Kellum. For the reasons set forth below, all claims against the Defendants are DISMISSED.

## I.    Nisha Patel

Plaintiff fails to establish personal jurisdiction over Defendant Nisha Patel. Patel is a Pennsylvania resident, and the Complaint alleges no facts showing that she is "at home" in New York or that her suit-related conduct bears any meaningful connection to New York. (Compl. ¶ 17; Patel Mem. at 10–11.) Because Plaintiff cannot establish either general or specific jurisdiction, the claims against Patel must be DISMISSED without prejudice. *See Edwardo v. Roman Cath. Bishop of Providence*, 66 F.4th 69, 73 (2d Cir. 2023) (plaintiff bears the burden of making a *prima facie* showing that jurisdiction exists).

## A. General Jurisdiction

General jurisdiction over an individual exists only where the defendant is domiciled, or in the rare case where her contacts with the forum are so continuous and systematic as to render her essentially "at home" there. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (general jurisdiction is ordinarily limited to domicile); *see also Beskrone v. Berlin*, 656 F. Supp. 3d 496, 508–09 (S.D.N.Y. 2023) (for individuals, domicile or similarly permanent presence is required; business contacts alone are insufficient).

The Complaint affirmatively alleges that Patel resides in Pennsylvania. (Compl. ¶ 17.) It does not allege that Patel owns property in New York, maintains an office here, conducts continuous business here, or otherwise has a permanent and systematic presence in the State. Accordingly, Plaintiff fails to establish general jurisdiction over Patel.

## B. Specific Jurisdiction

The Court therefore turns to whether specific jurisdiction exists. Specific jurisdiction requires both (i) a statutory basis under New York's long-arm statute (CPLR § 302) and (ii) compliance with constitutional due process. *Edwardo*, 66 F.4th at 73.

### 1) CPLR § 302(a)(1)

CPLR § 302(a)(1)[2] authorizes specific jurisdiction over a non-domiciliary who "transacts any business within the state" where the cause of action "arises from" that transaction. *See* CPLR § 302(a)(1). Jurisdiction under this provision requires both (i) purposeful activity by the defendant in New York and (ii) a substantial relationship between that activity and the plaintiff's claims. *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (jurisdiction requires "articulable nexus" or "substantial relationship" between New York conduct and claim).

Plaintiff does not allege that Patel transacted any business in New York at all, much less that his claims arise from such transactions. The Complaint identifies no New York meetings, communications, contracts, or other forum-directed commercial activity by Patel. Allegations that Patel later cooperated with a federal investigation conducted outside New York do not constitute the transaction of business in the State. *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 248 (2d Cir. 2007). Moreover, even if Patel had some incidental contact with New York, Plaintiff does not

---

[2] Although CPLR § 302(a)(1) does not contain an express defamation carve-out, New York courts construe the provision narrowly where claims sound in defamation. In such cases, jurisdiction exists only where the allegedly defamatory statements themselves arise directly from the defendant's purposeful transaction of business in New York. *Best Van Lines*, 490 F.3d at 248 (noting that § 302(a)(1) is construed more narrowly in defamation cases).

allege that his claims arise from any such contact. The alleged injuries stem from statements made to federal investigators and from subsequent prosecutorial decisions made elsewhere, not from any New York-based business activity by Patel. Accordingly, CPLR § 302(a)(1) does not provide a basis for jurisdiction.

### 2)  CPLR §§ 302(a)(2) and (a)(3)

CPLR §§ 302(a)(2) and (a)(3) likewise do not apply. Where claims sound in defamation, New York's long-arm statute is construed narrowly. *Best Van Lines*, 490 F.3d at 248. CPLR §§ 302(a)(2) and (a)(3) expressly exclude "a cause of action for defamation," and courts do not permit plaintiffs to evade that limitation by recasting defamation-based allegations under alternative tort labels. *Sparrow Fund Mgmt.*, 2019 WL 8955307, at *7 (defamation carve-out applies to claims regardless of label).

Accordingly, courts examine whether the substance of the claims is based on allegedly false statements, regardless of how the claims are styled. *Mirza v. Dolce Vida Med. Spa, LLC*, 2024 WL 307969, at *5 ("courts ... look to the substance, not merely the name, of a claim in order to determine whether that claim sounds in defamation.") Here, all claims against Patel arise from the same alleged conduct: purportedly false statements made to federal investigators outside New York and the downstream consequences of those statements. Plaintiff alleges that those statements caused reputational, professional, and legal harm, and each asserted cause of action—including malicious prosecution, abuse of process, and § 1983 violations—is expressly derivative of their alleged falsity. (Compl. ¶ 33.) Where allegedly defamatory statements supply the sole basis for liability, CPLR § 302 does not confer personal jurisdiction, regardless of how the claims are styled. *Best Van Lines*, 490 F.3d at 245–48; *Cantor Fitzgerald, L.P. v. Peaslee*, 88 F.3d 152, 157 (2d Cir. 1996) ("Plaintiffs may not evade the statutory exception by recasting their cause of action as

something other than defamation."). Permitting jurisdiction here would effectively nullify the defamation carve-out by allowing plaintiffs to obtain jurisdiction through artful pleading.

Even if the defamation carve-out did not apply, Plaintiff fails to establish jurisdiction under CPLR § 302(a)(2), which authorizes jurisdiction only where the defendant commits a tortious act "within the state." Jurisdiction under this subsection turns on where the defendant's conduct occurred, not where the plaintiff later experienced alleged effects. *Bensusan Rest. Corp. v. King*, 937 F. Supp. 295, 299 (S.D.N.Y. 1996) (out-of-state conduct causing in-state effects insufficient), aff'd, 126 F.3d 25 (2d Cir. 1997). Patel met with federal investigators only in Washington, D.C. and Philadelphia, Pennsylvania. (Compl. ¶ 17; Patel Mem. at 10–11.) Plaintiff does not allege that Patel traveled to New York, made statements in New York, or otherwise engaged in forum-directed conduct. Out-of-state statements to law enforcement therefore cannot supply jurisdiction under § 302(a)(2). *Bensusan*, 937 F. Supp. at 29

CPLR § 302(a)(3) likewise fails to provide a basis for jurisdiction, even assuming arguendo that the defamation carve-out did not apply. That provision requires a tortious act (other than defamation) committed outside New York that causes a *direct* injury within the State, not merely downstream or derivative effects felt because the plaintiff resides here. *Lehigh Val. Indus., Inc. v. Birenbaum*, 527 F.2d 87, 94 (2d Cir. 1975). In this matter, the alleged conduct consists of out-of-state statements to federal investigators in connection with an investigation and prosecution conducted entirely outside New York. The indictment was returned in the Eastern District of Pennsylvania, and all alleged prosecutorial actions flowed from investigative and charging decisions made there. (Patel Mem. at 5-6.) Plaintiff does not allege that any statement was made in New York, relied upon in New York, or directed toward New York audiences. Any reputational or economic harm later felt in New York is therefore derivative of out-of-state events and

insufficient to establish jurisdiction. *Friedr. Zoellner (New York) Corp. v. Tex Metals Co.*, 396 F.2d 300, 303 (2d Cir. 1968) ("Section 302(a)(3) is not satisfied by remote or consequential injuries which occur in New York only because the plaintiff is domiciled, incorporated or doing business in the state.")

Plaintiff's reliance on agency and conspiracy theories to establish jurisdiction is likewise unavailing. Agency jurisdiction under CPLR § 302 requires nonconclusory allegations that an alleged agent engaged in in-state conduct "for the benefit of, with the knowledge and consent of, and under some control by" the nonresident defendant. *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988) (control is essential); *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998) (same). Plaintiff pleads no such facts. He does not allege that Patel directed, authorized, or controlled any New York-based conduct, or that anyone acted on her behalf in New York. Allegations concerning Patel's out-of-state cooperation with federal investigators are insufficient to establish agency jurisdiction.

Plaintiff's conspiracy theory fails for similar reasons. Conspiracy-based jurisdiction requires specific factual allegations showing (i) an agreement, (ii) the defendant's knowing participation, and (iii) a New York-based overt act taken in furtherance of the conspiracy that is attributable to the defendant. *Lehigh*, 527 F.2d at 93–94. The Complaint identifies no New York overt act by Patel, alleges no facts concerning the formation or timing of any agreement, and relies instead on conclusory assertions that defendants acted "in concert," which are insufficient. (Pltf. Patel Opp. at 24); *Lehigh*, 527 F.2d at 93–94 ("The New York law seems to be clear that the bland assertion of conspiracy or agency is insufficient to establish jurisdiction…").

**C. Due Process**

Finally, exercising jurisdiction over Patel would not comport with due process. Due process requires that the defendant's own suit-related conduct create a substantial connection with the forum State. *Walden v. Fiore*, 571 U.S. 277, 284–89 (2014) (contacts must be defendant-focused, not based on plaintiff's forum connections). Patel's alleged conduct occurred entirely outside New York and consisted of communications with federal investigators located elsewhere. The fact that Plaintiff later experienced downstream effects in New York is insufficient, standing alone, to establish minimum contacts. *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 264 (2017) (rejecting jurisdiction based on non-forum conduct and forum effects).

Accordingly, because Plaintiff fails to plead any statutory basis for personal jurisdiction under CPLR § 302, and because exercising jurisdiction would exceed constitutional limits, the claims against Patel are DISMISSED without prejudice for lack of personal jurisdiction. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) (court must resolve jurisdictional defects before reaching the merits).

## I.     Hector Kellum

For the reasons set forth above with respect to Defendant Patel, Plaintiff likewise fails to establish personal jurisdiction over Defendant Hector Kellum.

Kellum is not subject to general jurisdiction in New York. He is a Pennsylvania resident, and the Complaint alleges no facts suggesting that he is domiciled in New York or has continuous and systematic contacts sufficient to render him "at home" here. *See Daimler*, 571 U.S. at 137.

Plaintiff also fails to establish specific jurisdiction under New York's long-arm statute. All claims against Kellum arise from alleged statements made to federal investigators outside New York and therefore fall within New York's defamation carve-out under CPLR §§ 302(a)(2) and

(a)(3). *See Best Van Lines*, 490 F.3d at 245–48; *Sparrow*, 2019 WL 8955307, at *17. Each asserted claim—including malicious prosecution, abuse of process, defamation, and § 1983 violations—is premised on the alleged falsity of those out-of-state statements. (Compl. ¶ 29(a)–(d).)

Even if the defamation carve-out did not apply, personal jurisdiction over Kellum would still be lacking under CPLR §§ 302(a)(1), (a)(2), and (a)(3). As with Patel, the Complaint alleges no purposeful business activity by Kellum in New York, no tortious act committed in the State, and no direct in-state injury, but only out-of-state cooperation with a federal investigation and downstream effects later felt in New York. *See Best Van Lines*, 490 F.3d at 248; *Bensusan*, 937 F. Supp. at 299. Any reputational or economic harm later felt in New York is merely derivative and too attenuated to constitute a direct in-state injury. *See Friedr Zoellner*, 396 F.2d at 303.

For the same reasons discussed with respect to Patel, Plaintiff's agency and conspiracy theories also do not establish personal jurisdiction over Kellum. (*See* Pltf. Kellum Opp. at 7-9.) Plaintiff pleads no nonconclusory facts showing that Kellum directed, authorized, or controlled any New York-based conduct, as required for agency jurisdiction. *See Kreutter*, 71 N.Y.2d at 467; *Jazini*, 148 F.3d at 185. Nor does Plaintiff plausibly allege conspiracy jurisdiction, which requires a New York-based overt act attributable to the defendant where they acted "in concert" with others. *See Lehigh Valley*, 527 F.2d at 93–94.

Finally, exercising jurisdiction over Kellum would not comport with due process. The Complaint alleges no forum-directed conduct or purposeful availment of New York, and allegations of downstream harm in New York are insufficient to establish minimum contacts. *See Walden*, 571 U.S. at 289; *Bristol-Myers*, 582 U.S. at 264. Accordingly, because Plaintiff fails to plead any statutory or constitutional basis for personal jurisdiction, the claims against Kellum are DISMISSED without prejudice for lack of personal jurisdiction. *Sinochem*, 549 U.S. at 430–31.

## II.    Teva Pharmaceuticals USA, Inc.

Plaintiff's claims against Defendant Teva fail as a matter of law. As discussed below, Plaintiff does not plausibly plead the essential elements of any of the four causes of action asserted against Teva—malicious prosecution, abuse of process, defamation, or violations of 42 U.S.C. § 1983.

### A.    Malicious Prosecution

Plaintiff fails to state a claim for malicious prosecution against Teva. Under New York law, a plaintiff must plausibly allege that the defendant (1) initiated or continued a criminal proceeding against the plaintiff, (2) that the proceeding terminated in the plaintiff's favor, (3) that there was no probable cause for the prosecution, and (4) that the defendant acted with actual malice. *Gilman v. Marsh & McLennan Cos.*, 868 F. Supp. 2d 118, 127–28 (S.D.N.Y. 2012). Each element is essential, and failure to plausibly plead any one is fatal to the claim. *Id.*

### 1.    Initiation or Continuation

As a threshold matter, Plaintiff fails to plausibly allege that Teva initiated or continued the criminal prosecution. Under New York law, a private party may be liable for malicious prosecution only if it played an active role in the decision to commence or continue criminal proceedings— such as by affirmatively inducing law enforcement to act, pressuring prosecutors, or knowingly providing false information that supplanted the government's independent judgment. *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 217 (2d Cir. 2000) (distinguishing mere cooperation from initiation); *Manganiello v. City of New York*, 612 F.3d 149, 163 (2d Cir. 2010) (initiation requires proof that defendant played "an active role in the prosecution"). By contrast, "the mere reporting of a crime to police and giving testimony are insufficient" as a matter of law. *Present v. Avon Prods., Inc.*, 253 A.D.2d 183, 189 (1st Dep't 1999).

The Complaint does not come close to meeting this standard. Plaintiff does not allege that Teva directed the investigation, dictated charging decisions, influenced the grand jury, or exercised control over whether charges were brought. Instead, the allegations establish only that Teva cooperated with federal investigators during a broad antitrust investigation—conduct that courts repeatedly hold is insufficient to constitute initiation. *Gilman,* 868 F. Supp. 2d at 128–29 (dismissing malicious prosecution claim where defendant merely cooperated with authorities); *Rothstein v. Carriere*, 373 F.3d 275, 293–95 (2d Cir. 2004) (providing information to prosecutors does not constitute initiation absent control over the prosecution); *Alcantara v. City of New York,* 646 F.Supp.2d 449, 458–59 (S.D.N.Y.2009) ("Even if the defendants could be considered to have forwarded information to prosecutors, or to have participated in the arrest of the plaintiff, they would not be subject to a malicious prosecution action 'in the absence of evidence that [they] misled or pressured the official who could be expected to exercise independent judgment.")

Plaintiff attempts to bridge this fatal gap by asserting, in conclusory fashion, that former employee Nisha Patel acted "on behalf of Teva and at Teva's behest." (Compl. ¶ 30.) But the Complaint pleads no facts—direct or circumstantial—supporting that assertion. Plaintiff does not allege the existence of any agreement requiring Patel to act on Teva's behalf, let alone to commit perjury. Nor does Plaintiff allege any communication in which Teva instructed Patel what to say to investigators or prosecutors. Plaintiff also fails to explain how or why Teva would have induced a former employee—testifying against Teva as the government's "key witness"—to provide false testimony that ultimately resulted in Teva itself being indicted and required to pay a $225 million criminal penalty. *See PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 493 (S.D.N.Y. 2017) (rejecting conclusory assertions that conduct was done "at [defendant's] direction" absent supporting facts). These allegations are not merely thin; they are implausible.

In short, the Complaint alleges, at most, lawful cooperation with a federal investigation and speculative inferences about influence unsupported by any concrete facts. Because Plaintiff fails to plausibly allege that Teva initiated or continued the prosecution, the malicious prosecution claim fails on this ground alone.

### 2. Lack of Probable Cause

Even if Plaintiff had plausibly alleged initiation or continuation, the malicious prosecution claim would independently fail because Plaintiff does not plausibly allege the absence of probable cause. Where, as here, a prosecution results in a grand jury indictment, probable cause is presumed as a matter of law. *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003). That presumption may be rebutted only by specific, nonconclusory allegations that the indictment was procured through fraud, perjury, suppression of evidence, or other misconduct that was material to the grand jury's decision. *Rothstein,* 373 F.3d at 282–83.

Plaintiff does not meet this standard. Plaintiff alleges in broad and conclusory terms that information provided to investigators was "false," "misleading," or "fabricated," but he does not identify any specific statement attributable to Teva, plead facts showing knowledge of falsity, or explain how any such statement was presented to—or relied upon by—the grand jury. (Teva Mem. at 14-15.) Nor does Plaintiff allege facts showing that any purported misstatement was material to the charging decision. (*Id.*) Such generalized allegations are insufficient to rebut the presumption of probable cause. *McClellan v. Smith*, 439 F.3d 137, 145 (2d Cir. 2006) (bare assertions of false testimony, without factual detail, do not overcome presumption).

Because Plaintiff fails to plead specific facts plausibly showing that the indictment was procured through misconduct material to the grand jury's decision, the presumption of probable cause remains unrebutted.

### 3.  Malice

Furthermore, Plaintiff fails to plausibly allege malice. To satisfy this element, a plaintiff must plead facts showing that the defendant commenced the criminal proceeding "due to a wrong or improper motive, something other than a desire to see the ends of justice served." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996). The individual "must have affirmatively induced the officer to act, such as taking an active part in the arrest and procuring it to be made or showing active, officious and undue zeal, to the point where the officer is not acting of his own volition." *Lupski v. Cnty. of Nassau*, 32 A.D.3d 997, 998 (2d Dep't 2006).

The Complaint pleads no facts plausibly suggesting "officious and undue zeal." *Lupski*, 32 A.D.3d at 998. Plaintiff's theory—that Teva cooperated with prosecutors to reduce its own criminal exposure—describes lawful, commonplace conduct, not malice. (Compl. ¶ 36.) New York courts consistently hold that cooperation with law enforcement, even when motivated by self-interest, does not constitute malice as a matter of law. *Lupski*, 32 A.D.3d at 998 (malice requires affirmative inducement or undue zeal sufficient to override independent law-enforcement judgment); *Present v. Avon Prods., Inc.*, 253 A.D.2d 183, 189 (1st Dep't 1999) ("The fact that defendants may have harbored ill will towards plaintiff is insufficient, without some evidence that this animus was 'the one and only cause for the publication.'"). The government's decision to indict Teva itself and impose a substantial criminal penalty further undermines any inference that Teva fabricated accusations against Plaintiff for its own benefit. (Teva Mem. at 9.) Accepting Plaintiff's theory would improperly transform routine cooperation into evidence of malice whenever charges are later dismissed—an outcome New York law squarely rejects. *Lupski*, 32 A.D.3d at 998; *Present*, 253 A.D.2d at 189; *Haigler v. Fischer*, No. 17-CV-574 (RJA) (HKS), 2023 WL 8114838, at *12 (W.D.N.Y. May 2, 2023) ("Conclusory allegations of malice, with no

factual basis or grounds to infer maliciousness, are insufficient to establish a malicious prosecution claim.").

Because Plaintiff fails to plausibly allege at least three required elements of malicious prosecution, the claim fails as a matter of law and is DISMISSED without prejudice.

### B.   Malicious Abuse of Process

Plaintiff's malicious abuse of process claim against Teva is time-barred. Under New York law, such claims are governed by a one-year statute of limitations. CPLR § 215(3); *Pentagen Techs. Int'l Ltd. v. United States*, 172 F. Supp. 2d 464, 472 (S.D.N.Y. 2001) (applying one-year limitations period to abuse of process claims). The claim accrues when legal process is first issued or misused—not when the criminal case later terminates. *Panetta v. Cassel,* No. 7:20-CV-2255 (PMH), 2020 WL 2521533, at *5 (S.D.N.Y. May 18, 2020) ("the applicable limitations period accrues at the time of the events that caused the injury."); *Kislowski v. Kelley*, No. 1:19-CV-0218, 2020 WL 495059, at *4 (N.D.N.Y. Jan. 30, 2020) ("A claim for abuse of process '[o]rdinarily ... accrues at such time as the criminal process is set in motion – typically at arrest – against the plaintiff.'").

By Plaintiff's own allegations, the purported abuse occurred during the investigative phase and culminated in his indictment in February 2020. (Compl. ¶¶ 30, 40, 44.) At the latest, any alleged misuse of process necessarily occurred upon the return of the indictment, because an indictment is the first formal issuance of criminal process capable of being misused for an improper or collateral purpose.  *Pinter v. City of New York*, 976 F. Supp. 2d 539, 570 (S.D.N.Y. 2013 ("[A] claim for abuse of process accrues at such time as the criminal process is set in motion.") Plaintiff did not commence this action until November 26, 2024—more than four years later and

well beyond the one-year limitations period. (*See generally* Compl.) The claim is therefore untimely on its face.

Plaintiff argues that accrual should be delayed until favorable termination under *McDonough v. Smith*, 588 U.S. 109 (2019). (Pltf. Teva Opp. 14–15.) That argument fails. *McDonough* addressed the accrual of federal fabrication-of-evidence claims under § 1983, holding that such claims accrue upon favorable termination because they necessarily challenge the validity of an ongoing prosecution. *McDonough v. Smith*, 588 U.S. 109 at 117–19 ("McDonough could not bring his fabricated-evidence claim under § 1983 prior to favorable termination of his prosecution."). Abuse of process, by contrast, is complete once legal process is issued and misused for an improper or collateral purpose, regardless of whether the prosecution ultimately succeeds or fails. *See Panetta*, 2020 WL 2521533, at *5. Favorable termination is not an element of the tort, and liability does not depend on the outcome of the criminal case. *Pinter,* 976 F. Supp. 2d at 570 (S.D.N.Y. 2013) ("Under New York law, favorable termination is not an element of the abuse of process claim and accrual of a cause of action for abuse of process need not await the termination of an action in claimant's favor."). Plaintiff's abuse of process claim therefore accrued no later than February 2020 and was not filed until November 2024, well outside the one-year statute of limitations.

Because the claim is untimely on its face, no amendment could cure this defect, and the Court need not reach the merits. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (leave to amend properly denied where defect is substantive and cannot be cured by better pleading). Accordingly, the malicious abuse of process claim against Teva is DISMISSED with prejudice under CPLR § 215(3).

### C. Defamation

Plaintiff's defamation claim against Teva is likewise barred by the statute of limitations. Under New York law, defamation claims are governed by a one-year limitations period, which begins to run "when the allegedly defamatory statements are originally uttered." *Cohen v. Cohen*, 210 A.D.3d 633, 634 (2d Dep't 2022); *Tucker v. Wyckoff Heights Med. Ctr.*, 52 F. Supp. 3d 583, 596–97 (S.D.N.Y. 2014) (dismissing defamation claim as untimely). A defamation claim accrues upon the first communication of the statement to a third party—not when the plaintiff later learns of the statement, suffers reputational harm, or claims vindication. *Teneriello v. Travelers Cos.,* 226 A.D.2d 1137, 641 (App.Div. 4th Dep't 1996) ("Contrary to plaintiff's contention, the action accrued when the statements were originally published in 1991, not upon plaintiff's discovery of the statements two years later.") Here, Plaintiff alleges that any statements attributable to Teva were made during the government's investigation and in connection with the events leading to his February 2020 indictment. (Compl. ¶¶ 44, 48.) Plaintiff does not identify any allegedly defamatory statement published by Teva after that time, let alone within one year of the filing of this action on November 26, 2024. The claim is therefore untimely by several years. *See Tucker,* F. Supp. 3d at 596–97.

Plaintiff counters that accrual should be delayed until dismissal of the criminal case because the alleged falsity of the statements was not "confirmed" until that point. (Pltf. Teva Opp. at 18.) That argument is foreclosed by settled New York law. New York courts consistently reject delayed accrual based on later exoneration, dismissal of charges, or subsequent confirmation of falsity. *Tucker*, 52 F. Supp. 3d at 597 (rejecting delayed accrual despite later dismissal of criminal charges); *Van Buskirk v. The New York Times Co.*, 325 F.3d 87, 88 (2d Cir. 2003); *Teneriello,* 226 A.D.2d at 641. Therefore, the rule is categorical: once an allegedly defamatory statement is

published, the limitations period begins to run, even if the plaintiff later contends that the statement was disproven or undermined by subsequent events. Allowing delayed accrual in these circumstances would improperly tie defamation claims to the outcome of criminal proceedings and nullify CPLR § 215(3)'s bright-line rule.

Because Plaintiff's defamation claim accrued no later than February 2020 and was not filed until November 2024, it is untimely as a matter of law. No amendment could cure this procedural defect and the Court need not proceed to the merits. *See Cuoco,* 222 F.3d at 112. Accordingly, the defamation claim against Teva is DIMISSED with prejudice.

### D.  Denial of Right to Fair Trial Based on Fabricated Evidence under 42 U.S.C. § 1983

Plaintiff's claim against Teva under 42 U.S.C. § 1983 fails as a matter of law because Plaintiff does not plausibly allege that Teva acted under color of state law. Section 1983 provides a cause of action only for the deprivation of constitutional rights by a person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State." 42 U.S.C. § 1983; *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999) (Section 1983 excludes purely private conduct, "no matter how discriminatory or wrongful"). Private corporations are not state actors, and their conduct is actionable under § 1983 only where it is fairly attributable to the State. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982) (state action requires that the challenged conduct be "fairly attributable to the State"). To satisfy this requirement, a plaintiff must plausibly allege that the private defendant was a "willful participant in joint activity with the State or its agents." *Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002).

Plaintiff does not meet that standard here. The Complaint alleges, at most, that Teva cooperated with federal investigators during a criminal investigation and that information associated with Teva was later used by prosecutors. (Compl. ¶¶ 44, 48.) Allegations that a private

party furnished information to law enforcement—even if allegedly false or misleading—do not transform private conduct into state action. *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999) (furnishing information to police does not constitute state action); *Shapiro v. Goldman*, 2016 WL 4371741, at *9 (S.D.N.Y. Aug. 15, 2016) (cooperation with federal prosecutors insufficient to establish state action), aff'd, 696 F. App'x 532 (2d Cir. 2017).

Nor does Plaintiff plausibly allege a conspiracy or joint action between Teva and government officials sufficient to convert Teva into a state actor. To plead joint action, Plaintiff must allege specific facts showing an agreement or "meeting of the minds" between Teva and state officials to violate his constitutional rights, along with facts demonstrating that Teva exercised control over, or jointly participated in, the challenged government decision-making. *See Ciambriello*, 292 F.3d at 324–25. The Complaint falls well short of that standard. Plaintiff alleges no facts showing that Teva directed, influenced, or controlled prosecutors or investigators, or that any government actor surrendered independent judgment to Teva. Instead, Plaintiff relies on conclusory assertions that Teva and government officials acted "in concert", without pleading who allegedly agreed with whom, when any agreement was reached, or how Teva purportedly shaped the investigation or charging decisions. (Pltf. Teva Opp. at 18.) Such allegations are insufficient as a matter of law. *Ciambriello*, 292 F.3d at 324–25 (rejecting § 1983 conspiracy claim based on "conclusory, vague, or general allegations"); *Betts v. Shearman*, 751 F.3d 78, 85–86 (2d Cir. 2014) (same).

At bottom, the Complaint alleges only cooperation with a government investigation. But cooperation with law enforcement—even if extensive—does not constitute joint action or transform a private party into a state actor. *Ginsberg*, 189 F.3d at 272. Absent well-pleaded facts showing shared intent to violate constitutional rights or joint control over the prosecution,

Plaintiff's § 1983 conspiracy theory against Teva is DISMISSED without prejudice. *See Betts*, 751 F.3d at 85–86.

## II.    Sandoz Inc.

For the same reasons set forth above with respect to Teva, all of Plaintiff's claims against Defendant Sandoz—malicious prosecution, abuse of process, defamation, and violations of § 1983—fail as a matter of law.

Plaintiff's malicious prosecution claim against Sandoz rests on the same alleged conduct as his claim against Teva—out-of-state cooperation with a federal antitrust investigation and purported statements to law enforcement—and suffers from the same fatal defects. Plaintiff does not plausibly allege that Sandoz initiated or continued the prosecution, rebutted the presumption of probable cause created by the grand jury indictment, or acted with actual malice. *See Gilman*, 868 F. Supp. 2d at 127–29; *Savino*, 331 F.3d at 72.

Plaintiff's abuse of process and defamation claims against Sandoz are time-barred for the same reasons discussed above with respect to Teva. Plaintiff's § 1983 claim independently fails because Sandoz is a private corporation and the Complaint does not plausibly allege that it acted under color of state law. *See Lugar*, 457 U.S. at 937; *American Mfrs.*, 526 U.S. at 49–50.

Accordingly, Plaintiff's abuse of process and defamation claims against Sandoz are DISMISSED with prejudice, and Plaintiff's malicious prosecution and § 1983 claims are DISMISSED without prejudice, for the reasons set forth in the Court's analysis of the claims against Teva.

## III.    Christopher Bihari

Plaintiff's claims against Defendant Christopher Bihari likewise fail for the same fundamental reasons as the claims against Teva and Sandoz. Plaintiff does not plausibly allege that Bihari

initiated or continued the prosecution, rebutted the presumption of probable cause, or acted with actual malice. *See Gilman*, 868 F. Supp. 2d at 127–29; *Savino*, 331 F.3d at 72. Plaintiff's abuse of process and defamation claims are time-barred for the reasons discussed above, and those defects are incurable as a matter of law.

Plaintiff's § 1983 claim against Bihari also fails. Although Bihari is an individual defendant, the Complaint alleges at most that he cooperated with federal investigators. (Compl. ¶ 27.) Cooperation with law enforcement—even if allegedly motivated by self-interest—does not transform a private individual into a state actor. *See Ginsberg*, 189 F.3d at 272; *Shapiro*, 2016 WL 4371741, at *9.

Nor does Plaintiff plausibly allege a conspiracy or joint action between Bihari and government officials sufficient to establish state action. Conclusory allegations that Bihari acted "in concert" with prosecutors, without facts showing an agreement, shared intent, or control over prosecutorial decision-making, are insufficient as a matter of law. *See Ciambriello*, 292 F.3d at 324–25; *Betts*, 751 F.3d at 85–86.

Accordingly, Plaintiff's abuse of process and defamation claims against Bihari are DISMISSED with prejudice, and Plaintiff's remaining claims are DISMISSED without prejudice.

## IV.    Michael Vezza

Plaintiff's claims against Defendant Michael Vezza likewise fail for the same reasons discussed with respect to Defendants Teva, Sandoz, and Bihari.

Plaintiff's claims against Defendant Michael Vezza likewise fail for the same reasons discussed with respect to Teva, Sandoz, and Bihari. Plaintiff does not plausibly allege that Vezza initiated or continued the prosecution, acted without probable cause, or acted with malice. *See Gilman*, 868 F. Supp. 2d at 127–29; *Savino*, 331 F.3d at 72. Plaintiff's abuse of process and

defamation claims against Vezza are untimely for the reasons discussed above and are dismissed as a matter of law.

Plaintiff's § 1983 claim against Vezza fails because the Complaint does not plausibly allege that he acted under color of state law. (Compl. ¶ 28.)  As with Bihari, Plaintiff alleges only that Vezza cooperated with federal investigators. Such cooperation—even if extensive or motivated by a desire to obtain leniency—does not constitute joint action or state action. See *Ginsberg*, 189 F.3d at 272; *Betts*, 751 F.3d at 85–86. Plaintiff pleads no facts showing shared intent to violate constitutional rights or control over government decision-making. *See Ciambriello*, 292 F.3d at 324–25.

Lastly, Vezza seeks attorneys' fees pursuant to New York's anti-SLAPP statute. (Vezza Mem. at 18–19.) Although Vezza provided timely notice of his intent to seek fees, the Court declines to address entitlement or amount at this juncture. Where, as here, the action has not yet reached a final resolution—because Plaintiff's remaining claims are dismissed without prejudice and Plaintiff is granted leave to amend—courts routinely deem fee applications premature. *See AD 619 Co. v. VB Mgmt., Inc.*, 672 N.Y.S.2d 985, 986 (N.Y. Gen. Term 1998) ("it is premature for the court to address the issue of attorney's fees until a case has been completed"). Vezza's request for attorneys' fees is DENIED without prejudice to renewal, if appropriate, by post-judgment motion following final resolution of the action.

In sum, Plaintiff's abuse of process and defamation claims against Vezza are DISMISSED with prejudice, Plaintiff's malicious prosecution and § 1983 claims against Vezza are DISMISSED without prejudice, and Vezza's request for attorney's fees is DENIED without prejudice.

### A. Leave to Amend

"Although Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend 'shall be freely given when justice so requires,' it is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citations omitted).  When exercising this discretion, courts consider many factors, including undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility.  *Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Here, the Court will grant Plaintiff leave to file an amended complaint as to those claims dismissed without prejudice.  Notwithstanding the above explained deficiencies, Plaintiff could potentially plead facts that cure her complaint's various defects.  Although Plaintiff certainly has high hurdles to overcome, leave to amend in this case would not necessarily be futile at this juncture.  Furthermore, as this case is still in its infancy, there would be minimal prejudice to Defendants in permitting Plaintiff to amend.

## CONCLUSION

For the foregoing reasons, all Defendants' motions to dismiss are GRANTED in their entirety. Defendants Nisha Patel and Hector Kellum are DISMISSED without prejudice for lack of personal jurisdiction. As to Teva Pharmaceuticals USA, Inc. and Sandoz Inc., the claims for malicious prosecution and denial of the right to a fair trial under 42 U.S.C. § 1983 are DISMISSED without prejudice, while the abuse of process and defamation claims are DISMISSED with prejudice as time-barred. The same disposition applies to Christopher Bihari and Michael Vezza, whose malicious prosecution and § 1983 claims are DISMISSED without prejudice, and whose

abuse of process and defamation claims are DISMISSED with prejudice. Lastly, Vezza's request for attorneys' fees is DENIED without prejudice as premature.

Plaintiff is granted leave to file an amended pleading consistent with this opinion and order. Plaintiff shall have until February 23, 2026 to do so. Plaintiff is advised that the amended pleading will replace, not supplement the original complaint, so any claims he plans to pursue must be included in the amended pleading. Should Plaintiff timely file an amended pleading, the remaining Defendants shall have until March 18, 2026 to answer or respond to the amended pleading. If Plaintiff fails to timely file an amended pleading, those claims dismissed without prejudice will be deemed dismissed with prejudice.

The Clerk of Court is kindly directed to terminate the motions at ECF Nos. 64, 66, 71, 76, 78, and 83.

SO ORDERED:

Dated: January 28, 2026
White Plains, New York

NELSON S. ROMÁN
United States District Judge